# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> SHELLY S. SINGHAL, <br><br> Defendant. |

Criminal Action 10-108 (HHK)

UNDER SEAL

## MEMORANDUM OPINION AND ORDER

In April 2010, a grand jury returned an indictment charging Shelly S. Singhal, owner and Chairman of SBI USA, LLC ("SBI"), with criminal activity in connection with stock manipulation schemes.[1] Before the Court is Singhal's motion to dismiss the indictment [#4], in which he argues that the government improperly received and used materials that should have been protected by the attorney-client privilege in investigating his alleged wrongdoing and in presenting its case against him to the grand jury. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be denied as to the materials now before the Court but Singhal shall have an opportunity to seek the Court's review of the motion's merit as to documents not currently before the Court.

## I. BACKGROUND

The government accuses Singhal of coordinating a variety of schemes to illegally manipulate stock prices. In particular, it alleges that Singhal's company, SBI, paid for and disseminated publications promoting certain companies of which SBI owned shares without, as

---

[1] Specifically, the indictment charges Singhal with conspiracy, 18 U.S.C. § 371, mail fraud, 18 U.S.C. § 1341, and securities fraud, 15 U.S.C. § 78j(b), 78ff.

required by law, disclosing that ownership. In so doing, Singhal allegedly inflated the stock prices of those companies and, by selling the stock, profited from his illegal actions. The government refers to this type of scheme as "scalping." In addition, the government alleges that Singhal defrauded Xinhua Finance, a financial information products company based in China, by using limited liability companies and false documents to hide his interest in certain transactions and receive money from Xinhua Finance under false pretenses.

In carrying out these schemes, Singhal allegedly relied on the assistance of an individual named Robert Brown. According to the government, Brown owned shares in several of the companies involved in Singhal's scalping schemes and assisted in transferring funds and concealing the source of publications in furtherance of those schemes. Brown also, in the government's view, had interest in the companies involved in Xinhua Finance transactions and assisted in executing the fraud perpetrated against Xinhua Finance, in part by preparing false documents. The Federal Bureau of Investigation ("FBI") began investigating Brown in October 2007, and he pled guilty to obstruction of justice, 18 U.S.C. § 1503, in November 2009. Brown had agreed to cooperate with federal authorities in their investigation of these schemes, and through his counsel, he turned over to the government a variety of materials related to them.

Crucial to Singhal's current motion is that, for a number of years preceding his indictment, Brown served as counsel to Singhal and SBI. Singhal objects to the government's obtaining from Brown information and documents that Singhal believes are protected by the attorney-client privilege. In the course of communications between Singhal's current counsel and the government about this issue, the government provided to Singhal the FBI reports that resulted from interviews with Brown as well as all of the documents Brown produced. Most of

required by law, disclosing that ownership. In so doing, Singhal allegedly inflated the stock prices of those companies and, by selling the stock, profited from his illegal actions. The government refers to this type of scheme as "scalping." In addition, the government alleges that Singhal defrauded Xinhua Finance, a financial information products company based in China, by using limited liability companies and false documents to hide his interest in certain transactions and receive money from Xinhua Finance under false pretenses.

In carrying out these schemes, Singhal allegedly relied on the assistance of an individual named Robert Brown. According to the government, Brown owned shares in several of the companies involved in Singhal's scalping schemes and assisted in transferring funds and concealing the source of publications in furtherance of those schemes. Brown also, in the government's view, had interest in the companies involved in Xinhua Finance transactions and assisted in executing the fraud perpetrated against Xinhua Finance, in part by preparing false documents. The Federal Bureau of Investigation ("FBI") began investigating Brown in October 2007, and he pled guilty to obstruction of justice, 18 U.S.C. § 1503, in November 2009. Brown had agreed to cooperate with federal authorities in their investigation of these schemes, and through his counsel, he turned over to the government a variety of materials related to them.

Crucial to Singhal's current motion is that, for a number of years preceding his indictment, Brown served as counsel to Singhal and SBI. Singhal objects to the government's obtaining from Brown information and documents that Singhal believes are protected by the attorney-client privilege. In the course of communications between Singhal's current counsel and the government about this issue, the government provided to Singhal the FBI reports that resulted from interviews with Brown as well as all of the documents Brown produced. Most of

these documents are not before the Court, but they apparently include requests for and drafts of documents pertaining to some of the allegedly illegal transactions as well as emails among Brown, Singhal, and others. The government, aware of Singhal's objections but convinced they were not valid, proceeded with its investigation and indictment of Singhal using the materials from Brown.

Before Singhal was indicted, he filed an emergency motion for a hearing "to disqualify the prosecution team for presenting tainted evidence before the grand jury and to enjoin the grand jury from rendering an indictment based on prosecutorial misconduct" arising from his allegation that the government had improperly relied on privileged information. Def.'s Emergency Mot. at 1, filed in Misc. Action 10-190 ("Def.'s First Mot."). Chief Judge Lamberth denied the motion, concluding it would be more appropriate for a court to address the issues raised after indictment. *In re: Grand Jury Investigation*, Misc. Action 10-190 (April 1, 2010). Singhal has renewed his motion before this Court, now seeking "dismissal of the Indictment and disqualification of the tainted prosecution team." Def.'s Mot. to Dismiss Indictment ("Def.'s Second Mot.") at 8.[2]

## II. ANALYSIS

Singhal argues that the relief he seeks is warranted because "the government obtained privileged information from Mr. Singhal's attorney without following the [Department of Justice]'s procedures for obtaining such privileged information and without following this Court's procedures for establishing an exception to the attorney-client privilege." Def.'s Second Mot. at 8-9. In particular, he suggests that the government could have used what is called a "taint

---

[2] Both parties have incorporated by reference in this case their briefing before Chief Judge Lamberth as well as the exhibits attached to those filings.

3

team"—attorneys who are not involved in the case—to review the documents before the active prosecution team is permitted to see them and make use of the information they contain. Furthermore, he asserts that pursuant to *United States v. Zolin*, 491 U.S. 554 (1989), the Court, rather than the attorneys prosecuting the case, must determine whether the crime-fraud exception to the attorney-client privilege applies to any particular document. Singhal has provided the Court with two sets of documents in support of his arguments: the first contains some documents the government received from Brown and the second, filed *ex parte*, contains documents the government does not possess.

The government responds that it "has not received information protected by the attorney-client privilege from Robert Brown." Gov't's Opp'n to Def.'s Second Mot. at 3. It asserts that "[t]he information disclosed by Brown . . . concerned the administrative and business roles that [he] played in the transactions," so the privilege does not apply. *Id.* The government argues in the alternative that if the Court determines that any materials it received from Brown are subject to the attorney-client privilege, the crime-fraud exception to that privilege should apply. The government attached to its opposition to Singhal's original motion several documents it received from Brown, which it asserts demonstrate that Singhal's arguments lack merit.

The Court concludes that, as to the documents currently before it, Singhal is not entitled to any relief. Although it is correct that an intrusion on the attorney-client privilege "may result in a constitutional violation" that could merit relief, *United States v. Neill*, 952 F. Supp. 834, 840 (D.D.C. 1997), no such intrusion occurred here. The D.C. Circuit has held:

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate

4

and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). Accordingly, not all communications between a lawyer and client are privileged. For example, if an attorney gives advice of a non-legal nature or otherwise acts as a business partner rather than as a lawyer, her communications are not subject to the privilege. *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11-12 (D.D.C. 1998) (noting that "communications made by and to [an] in-house lawyer with respect to business matters, management decisions or business advice are not protected by the privilege" (citations omitted)). Based on these principles, the documents before the Court fall outside the category of communications to which the privilege applies.

The Court first addresses the documents Singhal provided for its review. Several of these documents cannot be protected by the privilege because they are communications between Brown, acting as Singhal or SBI's attorney, and third-parties. *Cf. Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977) ("If the information has been or is later shared with third parties, the [attorney-client] privilege does not apply." (citations omitted)).[3]

The other documents Singhal has attached to his motion are correspondence between Singhal's current counsel and the government as well as between Brown's attorney and the

---

[3] This category of documents includes those submitted as Exhibits 1, 4, 5, 6, 7, and 8 to Singhal's original motion to Chief Judge Lamberth.

government.[4] These similarly do nothing to support his arguments. The letters written by the government's attorneys demonstrate that the government has consistently taken the position that the materials it received were not covered by the attorney-client privilege. *See, e.g.,* Def.'s First Mot., Ex. 2; *id.,* Ex. 11. The letters written by Brown's attorney, contrary to Singhal's misleading description, state that "we do not believe that any of the documents being produced herewith . . . are subject to the attorney-client privilege because they do not contain communications made for the purpose of either seeking or rendering legal advice." *Id.,* Ex. 3 at 1-2; *see also id.,* Ex. 16 at 1.[5]

The documents Singhal submitted *ex parte,* which the Court notes are communications between Brown, Singhal, and other SBI employees but will of course not further describe, support the general proposition that Brown acted as Singhal and SBI's attorney. But these documents have no bearing on the question of whether the materials Brown provided to the government contained communications in which Singhal was seeking or Brown was providing legal services or information obtained from such communications. That the government has not

---

[4] In this category of documents are Exhibits 2, 3, 9, 10, 11, 12, 13, 14, 15, and 16 to Singhal's original motion to Chief Judge Lamberth. The Court need not address Singhal's remaining exhibit, Exhibit 17, because it is a filing in an unrelated case rather than a document that goes to show any fact relevant here.

[5] Singhal's motion quotes only the sentence that follows, which reads: "Moreover, to the extent that any of the communications might arguably fall within the confines of the attorney-client privilege, we believe that the Government's position is that they should be produced because they are subject to the crime-fraud exception to the privilege." Def.'s First Mot., Ex. 3 at 2; *id.,* Ex. 16 at 1. Although it may be that different procedures would have been necessary had the government or Brown's attorney thought the disclosures were appropriate based solely on the crime-fraud exception, it is clear from the letter that they relied primarily on their position that the privilege did not apply at all.

seen them is evidence that Brown properly withheld documents subject to the attorney-client privilege when making disclosures.

The documents the government submitted to the Court are also not subject to the attorney-client privilege. Contrary to Singhal's assertions, the summaries of FBI interviews of Brown[6] do not indicate that Brown revealed privileged information to FBI agents. They demonstrate that Brown discussed topics such as specific wire transfers between companies and individuals; dealings involving a company Brown had registered in his father's name and used to invest in other companies; payments for publications of the type used in scalping schemes, *see* Gov't's Opp'n to Def.'s First Mot., Ex. 1; investments Brown made at Singhal's suggestion; financial transactions in which Singhal was involved; Brown's familiarity with another lawyer the FBI was investigating, *see id.*, Ex 2; Brown's limited understanding of the schemes in which Singhal was involved; and events related to Singhal's dealings with Xinhua Finance, *see id.*, Ex. 3. The summaries contain no indication that any of these topics are related to legal services Brown provided to Singhal or SBI.

Singhal suggests that Brown read publications Singhal used in the alleged scalping schemes in order to provide legal advice about necessary disclosures on those documents, but the interview summaries refute that contention. Brown told FBI agents that his review of such publications consisted of removing language he did not like from the substantive text, which demonstrates that he was acting as a business partner rather than a legal advisor when he read them. *See id.*, Ex 2 at 4, 6, 7 (explaining that Brown "recalls marking up the text [of one

---

[6] These are Exhibits 1, 2, and 3 to the government's opposition to Singhal's original motion.

publication] quite a bit, meaning that he struck out some of the more outlandish statements"; noting that Brown told his interviewer that he "thoroughly reviewed each" publication regarding another company and that he thought "some of the flowery stuff makes your skin crawl" so he "toned down that kind of verbiage in his edits"; and reporting that Brown "again stated" regarding another publication "that he recalls receiving the text . . . and positively marking out the flowery statements"). At one point he even directly said that as to one publication, he "[did] not recall seeing or reviewing any disclaimers included in the text that he reviewed, but does know that disclaimers are required." *Id.*, Ex. 3 at 6.[7]

The government has also provided several email chains that have as their subject "Attorney Client Confidential."[8] The Court agrees with the government's assessment that these emails, despite what their subject lines suggest, are not the communications "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Sealed Case*, 737 F.2d at 98-99. Instead, they are communications about the movement of funds between companies and individuals in which Brown acts as a business associate.[9]

---

[7] In addition, the portion of an interview in which an FBI agent questioned Brown about the disclosure on a particular publication and its accuracy contains no indication that Brown wrote, reviewed, or had ever read the disclosure or that he had ever discussed its legitimacy with Singhal. *See* Gov't Opp'n to Def.'s First Motion, Ex. 2 at 7.

[8] These are Exhibits 6 through 11 to the government's opposition to Singhal's original motion. This opinion does not address Exhibits 4A, 4B, 5A, and 5B to that filing because they are indictments of Brown and another attorney about whom the FBI asked Brown in his interviews, not documents Brown provided to the government.

[9] One chain begins with an email sent from Singhal to Brown and two other individuals, one who also appears to be an SBI employee and another whose email address suggests that he is not, describing a series of transfers and payments between several companies

8

Because the Court concludes that the attorney-client privilege does not protect any of the documents before it, it need not address Singhal's arguments regarding the procedures the government should have followed in the first instance or the Court should follow now. The methods of handling information to which the government believes the crime-fraud privilege might apply are not relevant here because where there is no privilege, there is no need to assess whether a document fits within an exception to it. Furthermore, the Court need not reach the question of what sort of relief is appropriate because the government correctly determined, as far as the Court can at this point ascertain, that it could properly use the information Brown provided. Because a breach of the attorney-client privilege is not to be taken lightly and because

---

and asking if "we have paperwork for all these transactions." Gov't Opp'n to Def.'s First Motion, Exs. 6, 10, 11. In the second email, from Brown to Singhal, Brown replies yes or no as to each transfer or payment and adds details about the paperwork, including as to two items "I can prepare." *Id.*, Exs. 6, 11. In response to Singhal's indication that "SBI USA, LLC's monthly income will be taxed at the LLC level," Brown responded "I understand your conclusion." *Id.*, Exs. 6, 11. The final email in the chain is from Singhal and Brown and reads only "Bob, Can you put all the paperwork together in one email and send it over. I think the wire is going to hit on Monday. Thanks Shelly." *Id.*, Exs. 6, 11. This set of emails are the only documents before the Court that give it pause. But the Court does not believe that this correspondence, in which Singhal asks for no legal advice or opinion and Brown provides none, can reasonably be said to fall under the attorney-client privilege. Although the emails contain a reference to "paperwork," which might mean contracts, the first email, which contains essentially all of the substantive information in the chain, went to a third party. Furthermore, it seems that Brown is acting as a business associate assisting with transactions rather than as an attorney providing legal services. *Cf. Boca Investerings Partnership*, 31 F. Supp. 2d at 12 ("When a lawyer acts merely to implement a business transaction or provides accounting services, the lawyer is like any other agent of the corporation whose communications are not privileged." (citations omitted)). The second chain begins with correspondence from a third party to Singhal, the substance of which apparently concerns shares of a company. *Id.*, Exs. 7, 9. It then includes a series of emails between Singhal, other SBI employees, and Brown regarding to what company or person various amounts of money is to be or has been wired. *Id.*, Exs. 7, 9. The third chain similarly begins with correspondence between Singhal and third parties and then includes emails between Singhal, Brown, and SBI employees that discuss wiring certain amounts of money to certain companies and individuals. *Id.*, Ex. 8.

9

the Court does not have before it any of the correspondence regarding draft documents Singhal alleges are legal in nature, the Court will permit Singhal to identify and provide to it any particular documents the Court has not seen that he believes are subject to the privilege. Should the Court determine that those documents are protected by the privilege, the Court will then determine to what relief Singhal is entitled.

### III. CONCLUSION

For the foregoing reasons, it is this 27th day of July, 2010, hereby **ORDERED** that Singhal's motion to dismiss the indictment [#4] is **DENIED** as to the materials currently before the Court.

It is further **ORDERED** that by no later than August 4, 2010, Singhal may identify and provide to the Court any documents the government received from Brown, not attached to any filing currently before the Court, to which he believes the attorney-client privilege applies.

It is further **ORDERED** that the status conference currently scheduled for July 30, 2010, is cancelled and shall be rescheduled after the Court has had an opportunity to review any additional documents Singhal submits.

Henry H. Kennedy, Jr.
United States District Judge