UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 10-108 (RCL) |
| ) | |
| SHELLY S. SINGHAL, ) | UNDER SEAL |
| Defendant. ) | |

## MEMORANDUM OPINION

A grand jury returned an Indictment charging Shelly S. Singhal, owner and Chairman of SBI USA, LLC ("SBI"), with criminal activity in connection with stock manipulation schemes. Indictment, Apr. 27, 2010, ECF No. 1. Singhal filed a Motion to Dismiss the Indictment, arguing that the government improperly received and used materials protected by the attorney-client privilege in investigating his alleged wrongdoing and in presenting its case against him to the grand jury. Mot. Dismiss Indictment, June 8, 2010, ECF No. 4. Judge Kennedy denied the Motion as to the materials then before the Court but gave Singhal an opportunity to submit other documents for the Court's consideration on the same issue. Mem. Order Op., July 27, 2010, ECF No. 6. The case was subsequently transferred to the undersigned judge. Singhal filed a supplemental set of documents and an accompanying memorandum in further support of his Motion to Dismiss the Indictment. *Ex Parte* Supplement Supp. Mot. Dismiss, August 4, 2010. He submitted this filing to the Court *ex parte*, although the government received a redacted version of it. Upon consideration of the Motion, the Opposition, the Reply, the applicable law,



and the entire record in this case, the Court will DENY the Motion to Dismiss for the reasons that follow.

I.      BACKGROUND

Judge Kennedy's previous Memorandum Opinion describes the relevant factual background. Mem. Op. Order 1–3. The government accuses Singhal of coordinating a variety of schemes to manipulate stock prices illegally. One type of scheme, "scalping," involves disseminating publications promoting particular companies—specifically, Infinium Labs, Inc., IT&E International Group, and Aztec Oil & Gas, Inc.—of which SBI owned shares. Opp'n Mot. Dismiss Indictment 4, June 21, 2010. The government alleges that Singhal issued newsletters to inflate these companies' stock prices but left out the legally required disclosures of SBI's interest in the companies. *Id.* at 4–5.

The other set of schemes involves Singhal's alleged defrauding of a Chinese company, Xinhua Finance. *Id.* at 6. According to the government, Singhal—under false pretences—induced Xinhua Finance to send funds to companies in which it did not know he had an interest. *Id.* at 6–7. He allegedly used companies called Wiremill LLC, Entree Capital, LLC, and Region I Partners LLC in carrying out his criminal activities. *Id.*

The government contends that Singhal relied on Robert Brown's assistance to carry out these schemes. *Id.* at 4–7. According to the government, Brown owned shares in several of the companies involved in the scalping schemes and assisted in transferring funds and concealing the source of publications in furtherance of them. Opp'n *Ex Parte* Supplement 6–8, Aug. 16, 2010. Brown also, in the government's view, had an interest in the companies involved in Xinhua Finance transactions and assisted in executing the fraud perpetrated against Xinhua Finance, in part by preparing false documents. *Id.* at 10, 14. The FBI began investigating Brown, and he

eventually pled guilty to obstruction of justice. Having agreed to cooperate with federal authorities in their investigation, Brown, through his counsel, turned a variety of materials related to these schemes over to the government.

Crucial to Singhal's current Motion is that, for a number of years before his indictment, Brown served as counsel to Singhal and SBI. *Id.* at 2–3. Singhal objects to the government's obtaining from Brown information and documents that he believes are protected by the attorney-client privilege. *Ex Parte* Supplement Supp. Mot. Dismiss 1. In the course of communications between Singhal's current counsel and the government about this issue, the government provided to Singhal three FBI reports of interviews with Brown as well as many documents Brown produced. Mem. Op. Order 2–3. The government, aware of Singhal's objections but convinced they were invalid, proceeded to investigate and indict Singhal using the materials Brown provided. The government indicted Singhal after this Court denied his pre-indictment motion, which sought to prevent the government from relying on these materials. Mem. Op. Order, April 1, 2010. Singhal hopes that his supplemental submission will persuade the Court to conclude that the government acted improperly. *Ex Parte* Supplement Supp. Mot. Dismiss 1–3. If it does, Singhal contends the Court should dismiss the Indictment against him and require the government to start over with a new prosecution team. *Id.*

## II. LEGAL STANDARD

### A. Outrageous Government Conduct

Singhal urges the Court to dismiss his Indictment because he contends that the government's conduct in prosecuting this case was so outrageous that it violated his constitutional Fifth Amendment right to due process. *See Rochin v. California*, 342 U.S. 165 (1952) (vacating the suspected drug-pusher-defendant's conviction and dismissing the

indictment where police had pumped his stomach to obtain incriminating evidence against him). In order to prevail on his claim, Singhal must show (1) the government's objective awareness of an ongoing, personal attorney-client relationship between Brown and Singhal; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice. *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).

Although the Supreme Court recognized fifty years ago that law enforcement misconduct can rise to a level so outrageous that it violates the defendant's Fifth Amendment due process rights, courts since *Rochin* have rarely applied the doctrine. As one court put it, "The banner of outrageous misconduct is often raised but seldom saluted." *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993) (observing further that "courts have rejected its application with almost monotonous regularity"). This reticence, which is grounded in separation of powers principles, is proper. Singhal asks the Court to hold that—as a matter of constitutional law—the law enforcement activity in this case was unacceptable. As the *Voigt* court rightly acknowledged,

> [w]e must necessarily exercise scrupulous restraint before we denounce law enforcement conduct as constitutionally unacceptable . . . . Unless the behavior of the FBI rose to the level of outrageousness which would bar conviction, the conduct of agents of the executive branch who must protect the public from crime is more appropriately considered through the political process where divergent views can be expressed in the ballot box.

*Voigt*, 89 F.3d at 1065 (citing *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982) (en banc)). With this legal context in mind, the Court must determine whether, as a matter of law, the conduct that Singhal alleges occurred in this case raises a cognizable claim of outrageous government conduct.

## B. Attorney-Client Privilege

The attorney-client privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. United States Shoe Machinery Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950). The Supreme Court has held that because the privilege obstructs the search for truth, courts should construe it narrowly. *See, e.g., Fisher v. United States*, 425 U.S. 391, 403 (1976). Thus, where there are close calls, the Court will put a thumb on the scales in favor of narrow construction of the elements of the privilege. Moreover, the party asserting the privilege bears the burden of establishing that any allegedly privileged communication actually is privileged. *In re Grand Jury Subpoena*, 415 F.3d 168, 170 (4th Cir. 2005).

### III. ANALYSIS

**A. Singhal has failed to show the government's objective awareness of an ongoing, personal attorney-client relationship between himself and Brown.**

Before getting into any arguments that the attorney-client privilege protects specific documents in the government's possession, Singhal first argues that Brown obtained the information he provided to the government in his capacity as Singhal's attorney. Singhal has filed his specific arguments as to this point *ex parte*, so the Court will not describe them here.

The Court notes only that, as explained in Judge Kennedy's previous Opinion, Singhal has not shown that Brown was providing him with legal advice in conducting the transactions that are the subject of the documents and information he submitted to the government. The case Singhal cites for the proposition that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege" does not change the Court's conclusion because it, like those cited in the Court's prior Opinion, requires that the lawyer have given legal advice in order for the privilege to apply. *Coleman v. Am. Broadcasting Cos.*, 106 F.R.D. 201, 206 (D.D.C. 1985); *see also Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) ("Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected.") (citation omitted); *United States v. Philip Morris USA, Inc.*, 2004 WL 5355972, at *6 (D.D.C. 2004) (same) (citing *Neuder*, 194 F.R.D. at 292). In short, the Court agrees with Judge Kennedy that the documents Singhal submitted in his original Motion to Dismiss the Indictment relate to business advice or business transactions in which Brown was simply following Singhal's instructions, not to legal advice. It further finds that the same can be said for all of the documents Singhal submitted with the Motion currently before the Court. None of these documents makes the requisite clear showing that Brown was acting as Singhal's lawyer with regard to any of these transactions. *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Furthermore, Singhal produces no evidence that the government knew of any such relationship between himself and Brown as is required. Accordingly, because the Court finds that (1) Singhal has not shown that Brown acted as his lawyer with regard to the transactions at issue in this case and (2) Singhal has not shown the government's objective awareness of any such relationship, it concludes that Singhal has failed to establish the first element of his outrageousness claim.

### B. Singhal has failed to show an intentional government intrusion into any attorney-client relationship between himself and Brown.

Singhal next argues that the attorney-client privilege protects certain particular documents in the government's possession. The Court concluded above that Singhal has failed to show that Brown acted as his lawyer in connection with the transactions and communications in question here. Because the attorney-client privilege cannot possibly protect any of the documents Singhal has submitted absent such a clear showing, *In re Sealed Case*, 737 F.2d at 99, it is arguably unnecessary to look any further into the matter. The Court recognizes, however, that it is possible that the exhibits associated with this second section of Singhal's Motion could accomplish independently what those associated with the first section could not—provide a clear showing that Brown acted as Singhal's lawyer in connection with the communications in question. Therefore, out of an abundance of caution, the Court will consider each of the documents Singhal argues are protected by the attorney-client privilege. Importantly, Singhal filed his Motion *ex parte*. Thus, portions of the document were redacted so that only the Court could review them. Discussion of exhibits related to this redacted *ex parte* material will be filed in a separate, sealed, ex parte appendix to this Opinion.[1]

Regarding the first three exhibits, Singhal's Motion expressly says, "The three FBI From 302s were attached as exhibits (1-3) to the government's Opposition to the Emergency Motions for Kastigar Hearing filed on March 25, 2010 before Chief Judge Lamberth (10-mc-211). We have reproduced those exhibits here for the Court's convenience as exhibits 1 . . ., 2 . . ., and 3." *Ex Parte* Supplement in Supp. Mot. Dismiss 2 n.2, Aug. 4, 2010. Thus, Singhal does not argue that these documents contain privileged information. In light of the fact that it is his burden to

---

[1] Specifically, Exhibits 4–7, 14, and 16–17 are discussed in the *ex parte*, sealed appendix.

prove the existence of the privilege, the Court will not analyze these documents for privilege. *In re Grand Jury Subpoena*, 415 F.3d at 170. Furthermore, Judge Kennedy already considered these documents and ruled that they were not privileged. Mem. Op. Order 7. This Court agrees with his reasoning and conclusions.

Exhibit 8 is a cover letter to the Assistant United States Attorney in this case from Brown's lawyer announcing the production of certain documents related to Wiremill, LLC and Region 1 Partners. *Ex Parte* Supplement in Supp. Mot. Dismiss Ex. 8. As with Exhibits 1–3 discussed immediately above, Singhal does not argue that the letter is privileged and instead relies on it to show that the government must have had access to more information, communications, and documents than it alleges. *Id.* Although this letter mentions attorney-client privilege *concerns*, it contains no communications between Brown and Singhal. Therefore, nothing in the letter is privileged.

Exhibit 9 contains e-mails between Brown, Singhal, and others and attachments to those e-mails. *Ex Parte* Supplement Supp. Mot. Dismiss Ex. 9. Most of the e-mails have third party recipients or contain no communications from Singhal to Brown and therefore are not privileged. *Id.* at RB00384–RB00385; RB01044–RB001047; RB1202–1204. Some of them, though, are in fact between Singhal and Brown exclusively. *Id.* at RB01115–RB001133; RB01201. Of those, the one that gives Singhal his best avenue for arguing for the protection of the privilege is an e-mail he received from Brown that says, "As requested," and attaches an edited draft of a business document. *Id.* at RB01115–1133. Generally, the privilege protects communications from *client to lawyer*, but it is true that it also protects communications from *lawyer to client* when they are based on an underlying confidential client-to-lawyer communication. *Brinton v. Dep't of State*, 636 F.2d 600, 603–04 (D.C. Cir. 1980). Because this e-mail and its accompanying attachment

8

are representative of many of Singhal's other submissions and because they afford him his best hope of attorney-client privilege protection, the Court will analyze them in some detail.

Assuming, for the purposes of analysis and contrary to the Court's finding above, that Brown and Singhal were in an attorney-client relationship, Brown, the lawyer, sent this e-mail to his client, Singhal. Accordingly, the privilege only protects it if it is based on an underlying confidential communication from Singhal to Brown. *Id.* Singhal claims that two words—"[a]s requested"—"reveal[] that Mr. Singhal asked his lawyer to draft legal documents for Region 1 Partners." *Ex Parte* Supplement in Supp. Mot. Dismiss 9. If the Court agrees, then Singhal would be correct that "[a]s requested" is a lawyer-to-client communication based on an underlying client-to-lawyer communication, and thus, this e-mail would at least be a *candidate* for attorney-client privilege protection. But Singhal produces no evidence to support his unstated assumption that he—Singhal—did the requesting referenced in the e-mail. It is his burden to prove the elements of the privilege, *In re Grand Jury Subpoena*, 415 F.3d at 170, and the privilege is to be construed narrowly. *Fisher*, 425 U.S. at 403. Accordingly, the Court must hold Singhal to his burden and require him to prove that he actually requested the document transmitted in the e-mail in question, otherwise this document is not a candidate for privilege protection.[2]

---

[2] It is easy to imagine a scenario in which Singhal did not request that Brown draft such a document, and yet he received the document in an e-mail from Brown that reads, "As requested." For example, Singhal and a third party could have been at a meeting discussing the potential drafting of the document. The third party could have mentioned to Singhal, "You know, I'm going to request that Bob Brown draft this document for us and send it on to you." The meeting ends and the third party approaches Brown and updates him about the meeting and the discussion of the document. The third party mentions that he told Singhal he was going to request that Brown draft the document and send it along to Singhal and says, "So could you go ahead and draft it and send it on to Shelly?" Brown then drafts the document and sends it to Singhal in an e-mail that reads, "As requested." Yet, Singhal did *not*, in this hypothetical, request that Brown

Moreover, even if the Court ignores this logical gap and assumes that Singhal requested that Brown draft the attached document, Singhal still cannot carry his burden of showing that this document warrants attorney-client privilege protection. Communications are only privileged if they were made for the purpose of securing legal advice. *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (holding that the privilege protects communications made in confidence to a lawyer to obtain legal counsel). Courts rely on many factors to determine whether a legal purpose underlies a communication, including:

---

draft the document. As another example, it is possible that Singhal, Brown, and several third parties were at a meeting like the one discussed above, and Singhal requested that someone—without naming anyone in particular—draft such a document. Then, one of the third parties drafted it and passed it on to Brown for his review, after which he was to pass it on to Singhal. Again, in this scenario, Brown would review—not draft—the document and send it on to Singhal in an e-mail "as requested," yet Singhal never requested anything of Brown in particular. These examples could go on forever, but one more should suffice to show just how unwarranted Singhal's assumption is. Imagine the meeting between Singhal, Brown, and several third parties again. This time, one of the third parties requests that Brown draft such a document and send it to Singhal for review. Brown does so, and sends the draft along in an e-mail "as requested," yet Singhal did no requesting at all, much less any requesting of Brown. Thus, Singhal's assumption is wholly unwarranted. Too much logical space separates the two words, "As requested," from Singhal's conclusion that he requested that Brown draft the attached document. The Court cannot make such a logical leap. Furthermore, it is unclear that requesting that a lawyer draft a document necessarily constitutes a confidential client-to-lawyer communication. Where the communications are of a mixed business and legal nature, the privilege will apply where the communication was primarily for the purpose of providing legal assistance and not for another purpose. In *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984), the Court held that where in-house counsel was both lawyer and company vice president with responsibilities outside the lawyer's sphere, the company was required to make a clear showing that the communications with in-house counsel were in a legal rather than business capacity in order to invoke the privilege. Thus, here, where, even giving Singhal's argument every benefit of the doubt, Brown wore at least two hats like the in-house counsel discussed in *In re Sealed Case*, Singhal would have to make a *clear* showing that the communication he seeks to cloak in the shelter of the privilege sought primarily legal advice. It is unclear whether a request that Brown draft a document satisfies that requirement. Luckily, because so many other considerations independently preclude the privilege's application to this e-mail, the Court need not address this vexatious question.

(1) The extent to which the attorney performs legal and non-legal work for the organization,

(2) The nature of the communication, and

(3) Whether or not the attorney had previously provided legal assistance relating to the same matter.

*See, e.g.*, 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5478 (Supp. 2009); Rest. 3d § 72 cmt. c (2000). Communications made to or by attorneys for business or financial purposes are not privileged. *See, e.g., In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (holding that communications were not privileged where attorney acted as a policy advisor, media expert, business consultant, banker, referee, or friend); *Georgia-Pac. Corp. v. GAF Roofing Mfg. Corp.*, No. 93 Civ. 5125, 1996 WL 29392, at *4 (S.D.N.Y. 2001) (holding that the attorney-client privilege did not apply to communications made between an in-house attorney and his corporate client while the attorney was acting as a contract negotiator because the attorney was acting in a business capacity rather than executing a traditional function of an attorney). Even assuming that Singhal requested that Brown draft the document attached to the e-mail in question, he has not shown that his request sought primarily legal advice. This hurdle to the privilege protection Singhal requests is discussed more thoroughly above as well as in Judge Kennedy's prior Opinion. Therefore, this e-mail is not privileged.

Turning to the many drafts Singhal submitted in Exhibits 9 and 10, courts in the D.C. Circuit have failed to settle upon a common rule governing whether drafts or attachments to them are privileged. This Court has no need to address this area of confusion, however, for at least three reasons. First, the Court cannot tell who drafted these documents. Without that

information, the Court cannot determine whether the draft is[3] or is at least based on a confidential client-to-lawyer communication. *Brinton v. Dep't of State*, 636 F.2d 600, 603–04 (D.C. Cir. 1980). Second, Singhal has failed to make the requisite clear showing that Brown was acting as his lawyer in connection with these drafts. *In re Sealed Case*, 737 F.2d at 98–99. Third, Singhal has failed to show that any communication in these drafts seeks primarily legal advice. *Id.* Therefore, they are not privileged.

Exhibit 11 is a draft letter on SBI letterhead, which Singhal characterizes as a "draft demand letter" that "is precisely the type of work product that a lawyer would prepare for his client." *Ex Parte* Supplement Supp. Mot. dismiss 10. Singhal produces no evidence that Brown actually drafted this letter. Assuming he did, though, as a lawyer-to-client communication it is only privileged if it is based on an underlying client-to-lawyer communication. *Brinton*, 636 F.2d at 603–04. Singhal does not identify any such underlying communication. In fact, nothing about this letter indicates that Brown *or* Singhal had anything to do with it, much less that Singhal sought the letter primarily for legal advice, that he sought that advice from Brown, or that it was not shared with third parties. Again, it is Singhal's burden to prove the elements of the privilege, *In re Grand Jury Subpoena*, 415 F.3d at 170, and the privilege is to be construed narrowly. *Fisher*, 425 U.S. at 403. Thus, the Court concludes that Exhibit 11 is not privileged.

Exhibit 12 is a five-page e-mail string, the first page of which has been redacted. Focusing on the redaction, Singhal argues that it clearly indicates that "all previous e-mails in the chain had been sent to Brown to obtain legal advice." *Id.* None of these e-mails is to or from Brown or Singhal, however. Indeed, none of the e-mails so much as mentions Brown or Singhal.

---

[3] At least one court has held that "[d]rafts, standing alone, are not 'communications' and hence normally are not within the attorney-client privilege." *Loftin v. Bande*, 258 F.R.D. 31, 35 (2009).

12

The argument that the redacted page so clearly indicates that all prior e-mails in the chain had been sent to Brown to obtain legal advice strikes the Court as highly speculative. There is nothing to indicate (a) that these e-mails were ever sent to Brown or (b) that they were sent to him to obtain his legal advice. Accordingly, Exhibit 12 contains no privileged material.

Exhibit 13 is a collection of e-mail strings, each of which is labeled "attorney-client confidential." Importantly, Judge Kennedy has already ruled on this Exhibit and found that it was not privileged. Mem. Op. Order 8–9 & n.9. He concluded that these communications reflected a business relationship between Singhal and Brown and did not show that Singhal was seeking legal advice from Brown. Judge Kennedy properly noted that the attorney-client privilege label stamped on each of the e-mail strings makes no difference. Whatever other properties "Attorney-client privilege" stamps may have, they certainly do not carry the talismanic power to relieve a party of its obligation to prove each of the privilege's elements in order to take shelter under its protection. *In re Grand Jury Subpoena*, 415 F.3d at 170. Accordingly, for the same reasons articulated in Judge Kennedy's prior opinion, this Court finds that Exhibit 13 contains no privileged material.

Singhal does not argue that Exhibit 15 is privileged. Instead, he contends that it shows that Melissa Mahler "identified Brown as SBI's transactional lawyer." *Ex Parte* Supplement Supp. Mot. Dismiss 11. Even assuming that is true, it is insufficient to establish that the attorney-client privilege protects this document.

Exhibit 18 is a letter from Brown's lawyer to the government. *Ex Parte* Supplement Supp. Mot. Dismiss Ex. 18. Singhal does not argue that this letter is privileged. Instead, he relies upon it as evidence that this Court should require the government to produce more

---

This Court takes no position on the issue at this time.

communications—both oral and written—in order to determine whether his attorney-client privilege has been violated. Given that Singhal does not contend that this document is privileged, the Court need not go into detail explaining why it is not. In short, this is not (nor does it reveal) a communication between Singhal and Brown, it was sent to third parties, and it does not seek primarily legal advice. Accordingly, it is not privileged. The same can be said for Exhibit 19—a letter from Singhal's counsel to the government requesting production of more materials. *Ex Parte* Supplement Supp. Mot. Dismiss Ex. 19.

As to the third element necessary to show outrageous government conduct requiring dismissal of an indictment, namely, that Singhal show substantial prejudice as a result of the government's alleged intrusion into his attorney-client relationship, because he has not shown a violation of his attorney-client privilege, he cannot show such substantial prejudice. *Voigt*, 89 F.3d at 1070 ("Voigt failed to demonstrate that any of the information Travis provided the government . . . was in fact privileged. We think that alone is fatal to his claim of outrageousness.").

### C. The Court will deny Singhal's request for an order requiring the government to produce all information—both documents and oral communications—it has received from Brown and his lawyers.

Finally, Singhal argues that the government has turned over an incomplete record of its communications with Brown and his representatives. He points out that the FBI's summaries of its interviews with Brown do not substantiate all the allegations in the Brown Information. Thus, Singhal argues, for the government to be able to draft the Brown Statement of Offense, it had to have received more information from Brown than is contained in the three 302s. Singhal argues that without the complete package of communications, he cannot determine the extent of the invasion of his attorney-client privilege. Accordingly, he requests that the Court order the

government to produce all information—both documents and oral communications—it has received from Brown and his lawyers. The Court will deny that request.

The Court has now gone through two rounds of document review related to Singhal's allegation that the government has invaded his attorney-client privilege, and both times, the search has yielded no privileged materials. At some point, the fishing expedition has to stop. Singhal has conceded that the government has been cooperative in producing documents related to this Motion, and the Court—open to his arguments—has reviewed his extensive document submissions patiently and thoroughly. His latest request, however, is unbounded in scope and therefore overbroad. Moreover, Singhal has failed to show clearly—as he must—that Brown was acting as his lawyer in connection with any of the transactions or communications in question. He has given the Court no reason to believe that the third time will be the charm and that he will be able to make such a clear showing if allowed one more chance to raise this issue. Therefore, the Court will deny his request.

Because the Court concludes that none of these materials is privileged, it needs not consider either the crime-fraud exception or the related *Zolin* issues Singhal raises.

### III. CONCLUSION

For the foregoing reasons, it is this 14th day of March 2011, hereby

ORDERED that Singhal's *Ex Parte* Supplement Concerning His Attorney-Client Privilege in Further Support of Motion to Dismiss Indictment is DENIED.

March 14, 2011
/s/_____
Royce C. Lamberth
Chief United States District Judge